# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTONIO LATIMORE, B62395, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 14 C 2926 |
| ) | |
| KESS ROBERSON, Warden, ) | |
| Lincoln Correctional Center, ) | |
| ) | Judge Rebecca R. Pallmeyer |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Antonio Latimore is serving a 45-year sentence for first-degree murder. In this action, he seeks relief pursuant to 28 U.S.C. § 2254 on four grounds: (1) his conviction violates due process because the evidence at trial was insufficient as a matter of law to establish guilt beyond a reasonable doubt; (2) in affirming his conviction on direct appeal, the Illinois Appellate Court (a) relied on an unreasonable application of Illinois Supreme Court law, improperly conflating theories of felony murder and transferred intent and (b) made an unreasonable determination of facts, in violation of Petitioner's due process rights; (3) his trial counsel was ineffective for failing to argue the evidence was insufficient or to object to a sentencing error, and appellate counsel on direct appeal was ineffective for failing to raise trial counsel's ineffectiveness; and (4) his post-conviction counsel was ineffective for failing to raise the first three grounds for relief.

Respondent Kess Roberson, the Warden at Lincoln Correctional Center where Petitioner is being held, moves to dismiss. Respondent contends Petitioner's fourth claim is not cognizable and the remaining three are untimely. As explained below, the court agrees that Petitioner's claim for ineffective assistance of post-conviction counsel is not cognizable under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The court denies Respondent's motion to dismiss the remaining three claims for untimeliness without prejudice. On this record,

the court is unable to determine whether Petitioner faced an unconstitutional impediment within the meaning of § 2244(d)(1)(B) or whether his 2003 post-conviction petition was "properly filed" under § 2244(d)(2). Therefore, additional briefing and an evidentiary hearing are required.

## BACKGROUND AND PROCEDURAL HISTORY

**I.    Conviction and Direct Appeal**

On habeas review, federal courts presume the factual findings made by state courts are correct. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). This presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The following facts are drawn from the Illinois Appellate Court's decision affirming the dismissal of Mr. Latimore's petition for post-conviction relief, (*People v. Latimore*, No. 1-11-3073 (Ill. App. Ct. 1st Dist. Dec. 2, 2013) Ex. G to Mot. to Dismiss [15-7]), and from the Illinois Appellate Court decision affirming Mr. Latimore's conviction on direct appeal. (*People v. Latimore*, No. 1-00-0489 (Ill. App. Ct. 1st Dist. June 29, 2001) Ex. A to State Ct. Record [15-1].)

On the afternoon of May 7, 1998, Petitioner Antonio Latimore started a gunfight with Eric Hodo, whom Petitioner knew was armed, in the vicinity of an apartment complex. During the fight, Veronica Vardiman, an innocent bystander, was killed, and Ivory Battles, another bystander, was injured. After a bench trial, Petitioner was convicted and sentenced to 45 years in prison for first-degree murder and to two concurrent six-year terms for attempted murder and aggravated battery with a firearm.

Petitioner appealed, arguing that there was insufficient evidence to prove him guilty beyond a reasonable doubt because the State had failed to prove that he intended to kill Veronica Vardiman and had failed to prove that he fired the shot that killed her. On June 29, 2001, the Illinois Appellate Court rejected Petitioner's argument and affirmed his conviction. *See People v. Latimore*, No. 1-00-0489 (Ill. App. Ct. 1st Dist. 2001). The Illinois Appellate Court concluded there was sufficient evidence to support Latimore's convictions under each of the theories of accountability, transferred intent, and felony murder predicated on aggravated

2

discharge of a firearm. *Id.* at 17. The Illinois Appellate Court reasoned that "although defendant did not fire the fatal or wounding shots, he is accountable for the actions of those engaged in the gun battle he started," and although Petitioner did not intend to kill Veronica Vardiman, he did intend to kill Eric Hodo. *Id.* at 19. The court concluded "the doctrine of transferred intent was properly applied in this case in conjunction with the doctrine of accountability." *Id.*

On December 5, 2001, the Illinois Supreme Court denied without comment Petitioner's ensuing petition for leave to appeal. (*People v. Latimore,* 197 Ill. 2d 573, 573 (Ill. 2001) (table), Ex. B to State Ct. Record [15-2].) Petitioner did not file a writ of certiorari in the United States Supreme Court. (Petition for Writ of Habeas Corpus [1], hereinafter "Petition," at 2.)

## II. Post-Conviction Proceedings

On July 17, 2003, petitioner filed a *pro se* post-conviction petition in the Circuit Court of Cook County, arguing again that the State failed to prove him guilty beyond a reasonable doubt. (Petition for Post-Conviction Relief, *People v. Latimore,* No. 98-cr-18629, Ex. C to State Ct. Record [15-3] at C17, hereinafter "Pet. for Post-Conviction Relief".) He further alleged that the State obtained his conviction through perjured and inconsistent testimony, that he was denied a fair trial by the prosecutor's prejudicial remarks during closing arguments, and that he was denied the effective assistance of trial and appellate counsel on direct appeal. (*Id.* at C29–32.) The trial court dismissed the petition as meritless in a written order on October 24, 2003. (*See People v. Latimore*, No. 1-4-0327, 2 (Ill. App. Ct. 1st Dist. May 18, 2005), Ex. D to State Ct. Record [15-4].) Petitioner appealed and the Illinois Appellate Court vacated and remanded in May 2005 because the trial court's order had not been entered within the required 90 days. (*Id.* at 4.)

On remand, petitioner filed an amended *pro se* petition for post-conviction relief on

August 11, 2010,[1] alleging that trial and appellate counsel were ineffective for failing to raise the insufficiency of the evidence. Petitioner did not reference the claims he raised in his original petition. (Petitioner's Amended Petition for Post-Conviction Relief, *People v. Latimore*, No. 98-cr-18629, Ex. E to State Ct. Record [15-5], C121–53 hereinafter "Am. Pet. for Post-Conviction Relief".) The State moved to dismiss Latimore's petition for post-conviction relief, alleging that each petition (the original petition in 2003 and the amended petition in 2010) was untimely and procedurally barred by *res judicata* and waiver. (People's Mot. to Dismiss Am. Pet. for Post-Conviction Relief, *People v. Latimore*, No. 98-cr-18620, Ex. E to State Ct. Record at C203.) In a *pro se* response to the motion to dismiss, Petitioner argued that the court should excuse his late filing because he was denied access to the law library due to staffing shortages and lockdowns. (Petitioner Reply Mot. and Arg. to Peoples Mot. to Dismiss Am. Pet. for Post Conviction Relief, *People v. Latimore*, No. 98-cr-1862, Ex. E to State Ct. Record at C212–13.)

The trial court held a hearing on the motion to dismiss on September 29, 2011. (*See* 9/29/11 Trans., Ex. F to State Ct. Record [15-6].) At the hearing, Petitioner's appointed post-conviction counsel requested that the court consider both the original and amended petitions. (*See* 9/29/11 Trans., Ex. F to Mot to Dismiss, U-7:5–6.) Counsel also raised the issue of Mr. Latimore's difficulties accessing the law library as a defense to untimeliness. (*Id.* at U-7:16–19.) The trial court "considered in its entirety all of the Petitioner's claims for relief in the State's motion to dismiss." (*Id.* at U-8:6–7.) The court explained that "[a]lthough Petitioner's petition

---

[1] The parties have not explained what occurred between May 2005 and August 2010. The court's own examination of the record has revealed what appears to be a state court docket (*see* Ex. E to State Ct. Record [15-5] at C2–32), which shows a series of motions and appeals taken between 2006 and 2007: on June 8, 2006 a "Motion for Corrected Mittimus" was filed, and an appeal taken in August of 2006. (*Id.* at C26–27.) By November 30, 2006 a "Special Order" was entered to "vacate and remand." (*Id.* at C26.) On January 4, 2007, it appears that Petitioner filed a motion for relief from judgment. (*Id.* at C27), and the State moved to dismiss the petition for relief from judgment on April 16, 2007. (*Id.* at C28.) The State's motion was granted on April 26, 2007. (*Id.*) The case was then continued from May 2007 through 2010. (*Id.* at C28–29.) The parties make no reference to this procedural history, nor do they assert that it changes the analysis in this case.

4

was filed untimely and is procedurally barred, the Court having fairly considered Petitioner's claims on the merits hereby find [sic] that the allegations of the post-conviction petition do not make a substantial showing of a constitutional violation. Wherefore, the petition for post-conviction relief is dismissed." (*Id.* at U-8:8–13.)

Petitioner timely appealed and the Illinois Appellate Court affirmed the dismissal of Mr. Latimore's petition for post-conviction relief on December 2, 2013, finding that Petitioner was not denied reasonable assistance of his post-conviction counsel. *People v. Latimore*, No. 1-11-3073 (Ill. App. Ct. 1st Dist. 2013). The Illinois Supreme Court denied petitioner's petition for leave to appeal on March 26, 2014. (*People v. Latimore*, 5 N.E. 3d 1127 (Ill. 2014) (table), Ex. H to State Ct. Record [15-8].)

### III. Habeas Petition

Some three weeks after the Illinois Supreme Court declined to review his case, Petitioner filed this action pursuant to 28 U.S.C. § 2254. A prisoner's *pro se* habeas petition is considered filed at the moment he delivers it to a prison official for mailing to the court. *Ray v. Clements,* 700 F.3d 993, 1002 (7th Cir. 2012) (citing *Houston v. Lack,* 487 U.S. 266, 275–276 (1988)). The envelope was postmarked with the date April 17, 2014 (*see* Petition [1]), but Respondent acknowledged that Petitioner filed this action on April 16, 2014 (*see* Mot. to Dismiss ¶ 6), and the court adopts that conclusion.

### **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs the standards for federal habeas relief from a state-court conviction and sentence. 28 U.S.C. § 2254. As noted, Petitioner raises four grounds for relief: (1) the evidence was insufficient as a matter of law to establish guilt beyond a reasonable doubt; (2) the Appellate Court decision was a contrary and unreasonable application of Illinois Supreme Court law and was based on an unreasonable determination of facts in violation of Petitioner's due process rights; (3) ineffective assistance of trial and appellate counsel on direct appeal; and (4) ineffective assistance of post-conviction

5

counsel. (Petition at 5–6.) Respondent argues that Petitioner's last claim is not cognizable under AEDPA and that the first three claims are barred by the statute of limitations.

I. **Petitioner's claim that his post-conviction counsel was ineffective is not cognizable.**

Petitioner argues that he is entitled to habeas relief because his post-conviction counsel, in both the Circuit Court and Appellate Court, was ineffective. (Petition at 6.) Yet, AEDPA explicitly prohibits this claim: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

Petitioner attempts to salvage his claim by arguing that it falls within the exception to procedural default outlined in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Petitioner's Response [16], 3.) But the *Martinez* exception cannot save a claim barred by statute. *Martinez* addressed the doctrine of procedural default. *Id.* at 1315–16. Ordinarily, when a petitioner seeks to raise, in his federal petition, a claim that was not raised in state court (either on direct appeal or in the state's post-conviction proceedings), that claim is procedurally defaulted and the federal court will not review the claim. *See Martinez*, 132 S. Ct. at 1316 (citing *Coleman v. Thompson*, 501 U.S. 722, 747–48 (1991); *Wainright v. Sykes*, 433 U.S. 72, 84–85 1977)). *Martinez* created a limited exception to this rule: the Court held that ineffective assistance of counsel in an initial post-conviction proceeding "may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. That is, where an underlying claim for ineffective assistance of counsel at trial has been procedurally barred, a petitioner may nevertheless resuscitate that underlying claim by showing that his or her counsel in the post-conviction collateral review process was ineffective for failing to raise it.

But, the underlying claim that can be resuscitated through the *Martinez* exception must itself state a ground for habeas relief. What § 2254(i) states is that even a perfectly preserved claim for ineffective assistance of post-conviction counsel cannot support habeas relief.

6

Petitioner alleges here not that his ineffective counsel in the post-conviction proceedings prevented him from raising some *other* claim that might warrant habeas relief, but rather, that the inadequacy of his post-conviction counsel itself should be the basis of that relief. AEDPA dictates otherwise, *see* 28 U.S.C. § 2254(i), and Petitioner's claim is, accordingly, dismissed.

II.     **Timeliness of Petition**

Respondent argues that Petitioner's remaining claims are untimely. (Mot. to Dismiss ¶¶ 9–14.) Under AEDPA, a state prisoner ordinarily has one year to file a federal habeas petition, starting from the date on which the state criminal judgment became final, either by the conclusion of direct review, or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1). There are three circumstances under which courts may use a later start date for the one-year clock: (1) where the state creates an unconstitutional impediment to the filing of a petition; (2) where the Supreme Court recognizes a new, retroactive constitutional right; and (3) where newly discovered evidence forms the factual predicate of a claim. 28 U.S.C. § 2244(d)(1)(B)–(D). Additionally, that one-year clock stops running while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Petitioner's judgment became final on March 5, 2002, ninety days after the Illinois Supreme Court denied review, *see People v. Latimore,* 197 Ill. 2d 573 (Ill. 2001) (table), when the time to file a petition for a writ of certiorari to the United States Supreme Court expired. Absent a later start date or any tolling, the one-year statute of limitations for his federal petition would have run by March 5, 2003. Petitioner did not file his initial post-conviction petition in state court until July 17, 2003. (Pro Se Post-Conviction Petition, *People v. Latimore,* 98-cr 18629 (Ill. Cir. Ct. Cook Cnty.), Ex. C to State Ct. Record [15-3], C17–19.) If, as here, the one-year period has already expired by the time the petitioner files for post-conviction review, § 2244(d)(2) cannot restart the clock. *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) (§ 2244(d)(2) excludes time if the one-year period is incomplete, but does not restart the

7

one-year clock once the statute of limitations has already run); *Teas v. Endicott*, 494 F.3d 580, 582–83 (7th Cir. 2007) (noting rule that if "no application for collateral review was pending in state court" when the statute of limitation runs, "the tolling rule of § 2244(d)(2) does not make the federal petition timely.")

Petitioner, accordingly, seeks to combine the tolling provision of § 2244(d)(2) with a later start date for the statute of limitations as permitted by §§ 2244(d)(1)(B)–(D). (*See* Petitioner's Resp. at 5.) If Petitioner can establish a late enough start date, through one of the three AEDPA exceptions, he argues, the filing of his post-conviction case in July 17, 2003 would toll the one-year clock until the post-conviction review concluded on March 26, 2014 when the Illinois Supreme Court declined to review Petitioner's case. This action, filed only 21 days later on April 16, 2014 would then fall within the one-year period. Therefore, this court must determine (1) the appropriate start date for the statute of limitations and (2) whether (and for how long) Petitioner's 2003 petition tolled the one-year clock.

### A. Determining the proper start date for AEDPA's statute of limitations

Without the benefit of a later start date, the one-year clock began to run on March 5, 2002, ninety days after the Illinois Supreme Court denied review, when the time to file a petition for a writ of certiorari to the United States Supreme Court expired. In his response brief, Petitioner argues he can identify a later start date under §§ 2244(d)(1)(B) and (C).[2] His argument under § 2244(d)(1)(C) is unavailing. That section permits the statute of limitations to start on "the date on which the constitutional right asserted was initially recognized by the Supreme Court" and made retroactive. 28 U.S.C. § 2244(d)(1)(C). Petitioner argues that Illinois

---

[2] Petitioner briefly alludes to the exception in § 2244(d)(1)(D) for newly discovered factual predicates. (Petitioner's Reply at 6) ("[T]he claims [Petitioner] present[s] was discover [sic] after the due date's [sic] of Petitioner's petitions in state courts and federal court" and citing "§ 2244(d)(1)(C)(D)".) But Petitioner has not identified any new factual predicates that could support the tolling of the statute of limitations and the court has observed none in the record. Therefore he cannot identify a later start date pursuant to § 2244(d)(1)(D).

8

courts recognized new rights in several cases.[3] (Petitioner's Resp. at 6.) The court need not address whether these cases actually created new rights, because regardless of Petitioner's reading of the Illinois cases, § 2244(d)(1)(C), by its own terms, applies only to new constitutional rights which are recognized by the United States Supreme Court. This comports with the Supreme Court's repeated admonition that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). *See also Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). It would be counterintuitive if newly created rights that could not support relief at all could restart the statute of limitations period. Petitioner has not identified any new constitutional rights created by the United States Supreme Court and is therefore not entitled to calculate the start date of the statute of limitations under § 2244(d)(1)(C).

Petitioner also asserts that "he presented facts in his post-conviction" filings that explained the delay and that "those facts should be retroactive to the federal habeas petition" because they show "that Petitioner was unable to file any petition in [a] timely manner." (Petitioner's Resp. at 5–6.) Petitioner stated in his state post-conviction case that he was denied meaningful access to the law library. (Petitioner Reply Mot. and Arg. to People's Mot. to Dismiss Am. Pet. for Post-Conviction Relief, *People v. Latimore*, No. 98-cr-1862, Ex. E to State Ct. Record, hereinafter "Pet. Reply Mot. in Post-Conviction," C212–13.) Although Petitioner does not cite § 2244(d)(1)(B) directly, he appears to be arguing that his lack of access to the law library was an unconstitutional impediment to his filing created by the state. Because "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted), the court considers the merits of this claim.

---

[3] Petitioner cites: *People v. Davis*, 233 Ill. 2d 244, 909 N.E.2d 766 (2009), *People v. Davis*, 213 Ill. 2d 459, 821 N.E.2d 1154 (2004), *People v. Pelt*, 207 Ill. 2d 434, 800 N.E.2d 1193 (2003); *People v. Boyd*, 356 Ill. App. 3d 254, 825 N.E.2d 364 (Ill. App. Ct. 4th Dist. 2005); *People v. McGee*, 345 Ill. App. 3d 693, 801 N.E.2d 948 (Ill. App. Ct. 1st Dist. 2003).

The Seventh Circuit has recognized that "[l]ack of library access can, in principle, be an 'impediment' to the filing of a collateral attack." *Estremera v. United States*, 724 F.3d 773, 776 (7th Cir. 2013). Whether there was such an impediment is a question of fact, because "[t]o hold that the absence of library access may be an impediment in principle is not necessarily to say that lack of access was an impediment for a given prisoner." *Id.* at 777. The Seventh Circuit noted that district courts must ask whether petitioner would have used a law library; if the petitioner "didn't want or need a law library during the year after his conviction became final, its unavailability . . . would not have been an impediment." *Id.* Indeed, the statute imposes the burden on Petitioner to show that he "was prevented from filing by [the] State action." 28 U.S.C. § 2244(d)(1)(B); *see Lloyd v. Van Natta,* 296 F.3d 630, 633 (7th Cir. 2002) ("[T]he plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition") (emphasis in original). The Seventh Circuit explained why a severe enough restriction on law library access can prevent a prisoner from filing a petition:

> a prisoner who files a § 2254 or § 2255 petition based on a bad legal theory may doom his chance to prevail on a good one, for the law allows just one petition as of right. Second or subsequent petitions are possible only under the conditions specified in 28 U.S.C. §§ 2244(b) or 2255(h). Thus filing a petition without research is risky: a good claim may be lost as undeveloped, or a bad claim may be advanced and rejected, blocking relief on a good claim later.

*Id.* at 776.

Given that the lack of access to the law library could be a sufficient impediment to restart the statute of limitations under § 2244(d)(1)(B), determining what library access Mr. Latimore had and when is critical. The extent of Mr. Latimore's access to the law library, however, is unclear from the current record. He asserts that between 2001 and 2006 he was denied access to the law library for several reasons. He specifically alleged in his state post-conviction filings that between "the years of 2002 and 2003 the Institution was short on staff members to were [sic] they had no supervisor for the law library for several months at a time . . . so they kept the library closed." (Pet. Reply Mot. in Post-Conviction at C212.) During those months, the only

10

prisoners who received legal assistance were "the people with certified documents from the court with legal deadlines," and Petitioner did not have such a document. (*Id.*) Petitioner continues that, "after [a] new supervisor came to replace the old one," the new supervisor took "several weeks at a time off which [led] the library to be closed once again." (*Id.*) At some point Petitioner did gain access to the library, just not as much as he would like. He states, without specifying any dates, that he worked an 8-hour day during the law library's only open hours and "the only time I was allowed to the library is when I was off on my off days which was Friday and Saturday and Saturday the library is closed. I was going to the library every other Friday for almost an hour but it was not enough time." (*Id.*) He also references frequent lockdowns "week after week" that limited his access. (*Id.*)

From these facts, the court understands that the library may have been completely closed for part of the year during 2002 and 2003. Then, when the supervisor was replaced, Petitioner acquired some, although still limited, access to the law library. Petitioner must have had at least some access to the law library before July 17, 2003 when he filed his initial petition for post-conviction relief in state court. The court is unable to determine precisely when (or even if) the library was completely closed, or when Petitioner gained access. The court cannot, therefore, identify what dates the alleged impediment was imposed and lifted. The Seventh Circuit has cautioned that to answer questions regarding "what access [Petitioner] had, and when . . . require[s] an evidentiary hearing to explore." *Estremera,* 724 F.3d at 777. The court also notes that the Respondent has not had an opportunity to respond to Petitioner's factual allegations about his access to the law library,[4] and therefore it would be premature to conclude that Petitioner did indeed face an impediment. *See Moore v. Battaglia*, 476 F.3d 504, 508 (7th

---

[4] Respondent's only related argument is that even if Petitioner was deprived access to the law library, that would not justify equitable tolling. (Respondent's Reply [19], 3.) Respondent has not, however, responded to the factual allegations to confirm or deny that the library was closed.

Cir. 2007) (noting that record was insufficiently developed because the state had not had an opportunity to respond to petitioner's assertions regarding access to law library). Therefore, an evidentiary hearing is necessary to determine what access Mr. Latimore had to the law library and when before the court can evaluate the proper start date for calculating the statute of limitations.[5]

### B. Is Petitioner entitled to tolling based on a "properly filed" application for State post-conviction review?

The parties argue only about which start date Petitioner is entitled to use, but do not address the second question that this court faces: whether Petitioner's July 17, 2003 post-conviction petition was "properly filed" and triggered tolling. *See* 28 U.S.C. § 2244(d)(2). Whether the petition triggered tolling will dictate whether this action is timely. Petitioner filed his initial post-conviction petition in state court on July 17, 2003. That petition remained pending until March 26, 2014, when the Illinois Supreme Court ultimately denied review of Latimore's collateral review proceedings. If the 2003 petition was "properly filed" and triggered tolling, then Petitioner can take advantage of the tolling until March 26, 2014.[6] But if the 2003 petition was not properly filed, and the statute of limitations not tolled, the one-year period would have run long before this case was filed on April 16, 2014. This is true even if Petitioner can take advantage of the later start date under § 2244(d)(1)(B). The latest date Petitioner alleges he was denied library access is 2006. Even if the impediment was not lifted until then, without tolling under § 2244(d)(2), the one-year period would have expired in 2007.

---

[5] Mr. Latimore also raises the possibility of equitable tolling, but the court does not need to address this claim given the possibility that Mr. Latimore's petition may still be timely under § 2244(d)(1)(B). *See Estremera v. U.S.,* 724 F.3d 773, 777 (2013) (invoking statutory tolling "makes it unnecessary to decide when equitable tolling . . . would be available"). The court, therefore, must resolve whether Petitioner's federal petition is timely under § 2244(d)(1)(B) before addressing the availability of equitable tolling.

[6] The fact that Petitioner could possibly have filed a petition for a writ of certiorari does not toll the statute further. *Tucker v. Kingston,* 538 F.3d 732, 734 (7th Cir.2008) (citing *Lawrence v. Florida,* 549 U.S. 327 (2007)).

Yet, Respondent has not discussed whether Petitioner's July 17, 2003 petition was "properly filed" within the meaning of § 2244(d)(2). Indeed, Respondent appears to assume that Petitioner would be entitled to tolling based on the 2003 petition: rather than addressing the "properly filed" requirement head-on, Respondent has simply fallen back on arguments regarding the proper start date. (*See* Mot. to Dismiss ¶ 13) ("[P]etitioner's July 17, 2003 postconviction petition even if 'properly filed' under state law, could not have tolled the limitations period because it already had expired by the time that postconviction petition was filed.")

Whether a post-conviction petition is deemed "properly filed" for purposes of tolling the statute of limitations is not necessarily a simple question. It depends on how the state court treated the petition. *Pace v. DiGuglielmo,* 544 U.S. 408, 412 (2005). In *Pace v. DiGuglielmo*, the Supreme Court held that when a post-conviction petition is rejected by the state court as untimely, it is not properly filed under § 2244(d)(2). 544 U.S. at 410. This is true "regardless of whether [the state court] also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." *Id.* at 414 (internal quotations omitted). That is, "when a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* The Seventh Circuit has clarified, however, that *Pace* "does not change the rule that requires the state court ruling to be a clear one." *Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005). The court elaborated that where the reasoning of the last state court to rule on the petition is ambiguous, "the court's treatment of the merits" may be "enough to make it 'properly filed' for purposes of the tolling rules of 28 U.S.C. § 2244(d)(2)." *Id.* In *Smith v. Battaglia*, "the petitioner . . . had an excuse for delay in filing that the [state] court did not address . . . [the Seventh Circuit] reasoned that if the delay was an independent and adequate state ground for finding the petition untimely, the state court would have considered [petitioner]'s argument that the delay was excusable." *Morales v. Boatwright*, 580 F.3d 653, 658 (7th Cir. 2009). "What *Smith* teaches is that it is incumbent on this court to parse the state court's

13

language to determine whether [the state] court believed dismissal was appropriate based on a filing error." *Id.*

Here, it is difficult to discern whether the state court determined that Mr. Latimore's petition was timely. Based on the record before the court, there is no suggestion that either the Circuit Court that reviewed the case in 2003 or the Appellate Court that reviewed Petitioner's case in 2005 rejected it as untimely. Indeed, it appears that the State did not raise the issue of the timeliness of Petitioner's 2003 petition until 2011 when it filed a motion to dismiss Petitioner's amended petition for post-conviction relief. (*See* People's Mot. to Dismiss Am. Pet. for Post-Conviction Relief, *People v. Latimore*, 98-cr-18629, Ex. C to Mot. to Dismiss at C207–08) (stamped filed July 19, 2011.) The Circuit Court's reasoning when it dismissed the case is far from precise and, as in *Smith v. Battaglia*, does not explicitly address Petitioner's alleged excuse for the delay. The trial court stated only that it:

> considered in its entirety all of the Petitioner's claims for relief in the State's motion to dismiss. Although Petitioner's petition was filed untimely and is procedurally barred, the Court having fairly considered Petitioner's claims on the merits hereby find [sic] that the allegations of the post-conviction petition do not make a substantial showing of a constitutional violation. Wherefore, the petition for post-conviction relief is dismissed.

(*See* 9/29/11 Trans., Ex. F to Mot to Dismiss, U-7:5–6, 16–19, U-8:8–13.) Furthermore, the last court to rule on Mr. Lattimore's petition—the Illinois Appellate Court—ruled on the merits of Mr. Lattimore's claim, determining that Mr. Latimore received adequate post-conviction counsel; and the reasoning of the "last state court to rule on [the] petition . . . is critical." *Battaglia*, 415 F.3d at 653. This court is, therefore, inclined to find that the July 17, 2003 petition was "properly filed" under § 2244(d)(2) and the statute tolled until March 26, 2014. But given the failure of the parties to address this issue, it would be premature to decide at this point whether the 2003 petition indeed tolled the statute of limitations.

## CONCLUSION

The court concludes that Petitioner's claim for habeas relief based on ineffective post-

conviction counsel is not cognizable and is dismissed. The court is left with two questions regarding the timeliness of Petitioner's remaining claims: (1) whether Petitioner was denied access to the law library so as to create an unconstitutional impediment to his filing a petition, and (2) whether Petitioner's July 17, 2003 petition was "properly filed" under § 2244(d)(2) and triggered tolling of the statute of limitations. Respondent has not shown that the petition is untimely and the court therefore denies the motion to dismiss [13]. The court invites the parties to submit additional briefing addressing these two questions. On its own motion, the court will appoint counsel to represent Petitioner for this purpose.

ENTER:

Dated: November 19, 2014

REBECCA R. PALLMEYER
United States District Judge