UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ANTONIO LATIMORE, B62395,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No.    14 C 2926** |
| | ) | |
| **KESS ROBERSON, Warden,** | ) | **Judge Rebecca R. Pallmeyer** |
| **Lincoln Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner Antonio Latimore is serving a 45-year sentence for first-degree murder in an Illinois prison.  Having exhausted his state-court remedies, he petitioned this court for relief pursuant to 28 U.S.C. § 2254 on four grounds.  This court dismissed one of Petitioner's four claims on November 19, 2014, but requested additional briefing on a timeliness argument that Respondent raised as a defense to Petitioner's remaining claims. *Latimore v. Roberson*, No. 14 C 2926, 2014 WL 6478110 (N.D. Ill. Nov. 19, 2014).  Respondent has now waived the timeliness defense and asks the court to decide the remaining three claims on their merits [25].[1] The court therefore turns to the merits of the remaining claims: (1) that the evidence at trial was insufficient to establish Latimore's guilt beyond a reasonable doubt; (2) that the Illinois Appellate Court unreasonably applied Illinois precedent and made an unreasonable determination of facts; and (3) that trial and appellate counsel provided ineffective assistance.  For the reasons explained below, the court dismisses these claims and declines to issue a certificate of appealability.

---

[1]     Respondent has requested an evidentiary hearing on the timeliness issue if the court does not rule for him on the merits. (Resp. [29] at 8 n.3)

## FACTUAL AND PROCEDURAL HISTORY

**I.      Conviction and Direct Appeal**

On habeas review, federal courts presume that the factual findings made by the last state court to adjudicate the case on the merits are correct.  *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).  This presumption can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The following facts are drawn from the Illinois Appellate Court decision affirming Latimore's conviction on direct appeal (*People v. Latimore*, No. 1–000489 (Ill. App. Ct. 1st Dist. June 29, 2001), Ex. A to State Ct. Record [15–1]), and from that court's subsequent decision affirming the denial of Latimore's petition for post-conviction relief.  (*People v. Latimore*, No. 1–11–3073 (Ill. App. Ct. 1st Dist. Dec. 2, 2013), Ex. G to Mot. to Dismiss [15–7]).

On the afternoon of May 7, 1998, Petitioner Antonio Latimore argued with his neighbor, Eric Hodo, in the stairwell of Latimore's apartment building.  In the course of the argument, Hodo pulled out a gun, but Latimore and others with him did not back down, because Latimore and at least one other individual were also armed.  Outnumbered, Hodo left the building. Latimore pursued Hodo outside and called to him; when Hodo turned around, Latimore shot at him.  Hodo returned fire, and a gun battle ensued in front of their apartment complex.  In the course of the gunfight, two innocent bystanders, Ivory Battles and Veronica Vardiman, were hit. Battles suffered a gunshot wound to his upper back that required brief medical attention. Vardiman, shot in the neck, died at the scene.  Latimore was arrested shortly thereafter and charged with first-degree murder, attempted murder, and an array of weapons charges. (Ex. F(2) to State Ct. Record [C13–C28].)

Under Illinois law, a person commits first-degree murder if, in performing the acts which cause the death of another, he (1) intends to kill or do great bodily harm, (2) knows that his acts create a strong probability of death or great bodily harm, or (3) causes the death while attempting or committing a forcible felony other than second degree murder.  720 ILCS 5/9–1.

A grand jury returned an indictment that charged Latimore with first-degree murder under each of these theories.  (*See* Ex. F(2) to State Ct. Record [C13–C28].)  Count 1 charged him with intentionally or knowingly killing Vardiman with a handgun.  (*Id.* at C13.)  Count 2 charged him with shooting Vardiman with a handgun with the knowledge that the shooting created a strong probability of death or great bodily harm.  (*Id.* at C14.)  Counts 3 and 4 charged him with killing Vardiman while committing the felony of aggravated discharge of a firearm (*Id.* at C15) or aggravated battery with a firearm.  (*Id.* at C16.)

After a bench trial, the court found Latimore guilty on all charges and sentenced him to 45 years in prison for first-degree murder and two concurrent six-year terms for attempted murder and aggravated battery with a firearm.  (Report of Proceedings, *People v. Latimore*, 98 CR 18629 (Cir. Ct. Cook Cnty.), hereinafter "Trial Transcript," Ex. F(2) at J9.)  The court did not specify which of the first-degree murder theories it had relied on. (*Id.*)

On direct appeal, Petitioner argued that there was insufficient evidence to prove his guilt beyond a reasonable doubt due to the state's failure to prove that he had (a) intended to kill Veronica Vardiman or (b) actually fired the shot that killed her.  The Illinois Appellate Court rejected Petitioner's claim and affirmed his conviction, explaining that the state had presented sufficient evidence to support a conviction under each of the theories of first-degree murder charged in the indictment: transferred intent, accountability, and felony murder.  (Ex. A to State Ct. Record [15-1].)  The Illinois Supreme Court denied Latimore's subsequent petition for leave to appeal in December 2001.  (*People v. Latimore*, 197 Ill. 2d 573 (Ill. 2001), Ex. B to State Ct. Record [15-2].)  He did not file a petition for certiorari with the United States Supreme Court. (Habeas Pet. [1] at 2.)

## II.    Post-Conviction Proceedings

On July 17, 2003, Petitioner filed a *pro se* petition seeking post-conviction relief in the Circuit Court of Cook County, again arguing that the state had failed to prove him guilty beyond a reasonable doubt. (Petition for Post-Conviction Relief, *People v. Latimore*, No. 98 CR 18629,

Ex. C to State Ct. Record [15–3] at C17.)  He also raised claims that he received ineffective assistance from counsel at trial and on direct appeal.  (*Id.* at C29–32.)  The trial court dismissed the petition as meritless in a written order on October 24, 2003.  (*See People v. Latimore*, No. 1–4–0327, 2 (Ill. App. Ct. 1st Dist. May 18, 2005), Ex. D to State Ct. Record [15–4].)  On appeal, the Illinois Appellate Court vacated and remanded the trial court's order because it had not been entered within the 90-day deadline set by the Illinois Post-Conviction Hearing Act.  (*Id.* at 4, *citing* 725 ILCS 5/122–1.)

On remand, petitioner filed an amended *pro se* petition for post-conviction relief on August 11, 2010, alleging that trial and appellate counsel were ineffective for failing to argue the insufficiency of the evidence.[2]  (Petitioner's Amended Petition for Post-Conviction Relief, *People v. Latimore*, No. 98–cr–18629, Ex. E to State Ct. Record [15–5], C121-53 hereinafter "Am. Pet. for Post-Conviction Relief.")  The court appointed post-conviction counsel.  That attorney filed a Rule 651(c) certificate[3] on January 27, 2011, stating that she had communicated with the defendant, examined the record, and saw no need to amend his *pro se* post-conviction petition because it adequately presented his claims. (*See* Ex. G at 1–2.)  At the hearing on this motion, counsel confirmed that she was standing on Latimore's *pro se* petition and did not present further argument.  (*Id.*)  The trial court dismissed his petition as untimely and procedurally barred.  (*See* Sept. 29, 2011 Trans., Ex. F to State Ct. Record.)  The court also noted that it had "fairly considered Petitioner's claims on the merits" and found "that the

---

[2]	This claim is puzzling, given that trial counsel did raise a sufficiency-of-the-evidence claim.  *See infra* at 18 n.9.  So, too, did appellate counsel.  (*See* Ex. A to State Ct. Record [15-1] at 16-17.)

[3]	Illinois Supreme Court Rule 651(c) requires that, where a court appoints counsel to represent a post-petition petitioner, "[t]he record filed in that court shall contain a showing . . . that the attorney has consulted with petitioner . . . to ascertain his or her contentions of deprivation of constitutional rights, has examined the record . . . , and has made any amendments to the petitions filed *pro se* that are necessary . . . ."  Appointed counsel files a Rule 651(c) petition to satisfy this requirement.

allegations of the post-conviction petition do not make a substantial showing of a constitutional violation. Wherefore, the petition for post-conviction relief is dismissed." (*Id.* at U–8.)

Petitioner appealed, arguing through a new attorney that his post-conviction counsel had been ineffective for failing to amend Petitioner's *pro se* claims and adequately present them in court. (*People v. Latimore*, No 1–113073 (Ill. App. Ct. 1st Dist. 2013), Ex. G to State Ct. Record [15-7].) The Illinois Appellate Court affirmed the trial court's dismissal of his post-conviction petition on December 2, 2013 (*id.*), and the state's Supreme Court denied his petition for leave to appeal on March 26, 2014. (*People v. Latimore*, 5 N.E.3d 1127 (Ill. 2014) (table), Ex. H to State Ct. Record [15–8].)

Petitioner submitted his own supplemental briefs before the Appellate and Supreme Court, augmenting those filed by his counsel. (Petitioner's Pro Se Reply to the Respondent's Answer [42], hereinafter "Pro Se Reply," at 1–2.) Both courts declined to review his *pro se* submissions, noting that the appearance of an attorney on his behalf precluded him from filing additional documents. (*Id.* at 3–4.)

## III.  Habeas Petition

On April 16, 2014, three weeks after the Illinois Supreme Court declined to review his case, Petitioner filed this *pro se* petition [1] pursuant to 28 U.S.C. § 2254. He raises four grounds for relief: (1) insufficient evidence; (2) unreasonable application of state law and unreasonable determination of facts; (3) ineffective assistance of trial and appellate counsel on direct appeal; and (4) ineffective assistance of post-conviction counsel.

Respondent moved to dismiss [13], arguing that the fourth claim of ineffective post-conviction counsel was not cognizable and that claims one, two, and three were untimely. In its November 2014 opinion [21], this court dismissed Latimore's ineffective assistance of post-conviction counsel claim and requested additional briefing and an evidentiary hearing to resolve the timeliness question relating to the remaining three claims. On its own motion, the court appointed counsel to assist Latimore with the timeliness claim.

Respondent sought leave to file an answer to the complaint, effectively waiving the timeliness defense, in December 2014 [23]. The parties have completed briefing on the merits of Latimore's three remaining claims. In addition, as he did during his state post-conviction proceedings, Latimore has filed his own reply brief in this case [42]. District courts may exercise their discretion in choosing whether to entertain or reject *pro se* motions filed by defendants who are already represented by counsel. *See United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009). As explained here, this court has elected to address the arguments raised in both the reply filed *pro se* and the reply filed by Latimore's court-appointed attorney.

## <u>DISCUSSION</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs the standards for federal habeas relief from a state court's conviction and sentence. 28 U.S.C. § 2254. A habeas petitioner can prevail on a claim that a state court has already adjudicated on the merits only if the state court's decision (1) "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." *See Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011) (citing 28 U.S.C. § 2254(d)(1)–(2)).

I.     **Sufficiency of the Evidence**

Petitioner's first claim is that the evidence at his trial was insufficient to establish his guilt beyond a reasonable doubt. (Habeas Pet. at 11–14.) In this habeas proceeding, Latimore is entitled to relief on this claim only if, in viewing the evidence in the light most favorable to the prosecution, *no* rational trier of fact could have found proof of his guilt beyond a reasonable doubt. *Curtis v. Montgomery*, 552 F.3d 578, 581 (7th Cir. 2009). Petitioner does not qualify for relief under this standard.

## A.    Felony-Murder Theory of First-Degree Murder

Petitioner first contends in his *pro se* petition that the state failed to prove him guilty of first-degree murder.  (Habeas Pet. at 11–12.)  As already noted, Latimore was indicted and convicted on four different theories of first-degree murder, any one of which would be sufficient to sustain his conviction.[4]  (*See* Ex. F(2) to State Ct. Record, C13–C28.)  He contends that the evidence was insufficient for his conviction because the government did not prove that he fired the shot that killed Veronica Vardiman.  (Habeas Pet. at 11 ¶ 7.)  Petitioner believes that Eric Hodo likely fired the fatal shot, and that he cannot be held accountable for any shots fired by Hodo because the two did not share a common criminal design, but were acting at cross-purposes in trying to kill each other.  (*Id.* at 11 ¶ 8.)  He notes in his petition that he "cannot be held responsible for someone's act who is trying to kill him, but accidentally kills and injures someone else.  That is a very odd form of accountability."  (*Id.* at 18.)

This court disagrees.  The fact that Latimore and Hodo did not share in a common criminal design does nothing to negate Latimore's accountability for the direct and foreseeable consequences of his own firing of a gun at an armed individual.  Illinois subscribes to the proximate-cause rule of felony murder, which holds individuals accountable for the direct and foreseeable consequences of a felony they commit.  As the Supreme Court of Illinois explained in *Lowery*:

> [L]iability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity—notwithstanding the fact that the killing was by one resisting the crime. . . . [W]hen a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act.

---

[4]    Under Illinois law, it is permissible for jurors to enter a guilty verdict for first-degree murder without specifying which of the "types" of first-degree murder they believe occurred.  *Illinois v. Smith*, 233 Ill. 2d 1, 16, 906 N.E. 2d 529, 537–38 (Ill. 2009).  Although the relevant Illinois statute specifies three different types of first-degree murder, they "are merely different ways to commit the same crime."  *Id.*  Accordingly, it was unnecessary for the trial judge to specify whether the defendant had committed intentional, knowing, or felony murder in issuing his verdict.

*Illinois v. Lowery*, 178 Ill. 2d 462, 467, 687 N.E.2d 973, 976 (Ill. 1997) (defendant who committed armed robbery found liable for the murder when the robbery victim shot at the defendant and accidentally hit and killed a bystander instead). The trial judge's ruling was consistent with this principle. His ruling explained that Latimore was accountable for the danger he created by initiating a gunfight, even if he did not fire the fatal shot: "The death of Veronica Vardiman and the injury to Ivory Battles was the natural and possible [sic] consequence of initiating a gun battle in broad daylight on the grounds of a CHA building at 3:30 in the afternoon . . . a felon is liable for those deaths which occur during a felony which are the foreseeable consequences of his initial criminal acts." (Trial Transcript, Ex. F(2) at J8.) The trial court concluded that Latimore's decision to fire a gun in a crowded area demonstrated his intent to kill, even if he did not intend to kill Veronica Vardiman in particular. (*Id.* at J7.)

The Illinois Appellate Court rejected Latimore's claim of insufficient evidence on direct appeal, holding that the evidence was sufficient to uphold his conviction under each of the theories of accountability, transferred intent, and felony murder. (Ex. A to State Ct. Record at 19–20.) The evidence at trial, including Latimore's own testimony, established that he pursued an armed man out of an apartment building and fired a gun at him. (Trial Transcript, Ex. F at I-23–I-26.) A gun battle ensued in the vicinity of innocent bystanders, which resulted in one injury and one death. (*Id.* at L20.) On cross examination, Latimore confirmed that he fired the first shot at his neighbor, Hodo, and that Hodo returned fire only after Latimore's initial shot. (*Id.* at I-33.) Latimore also testified that he was aware that two girls were standing nearby when he began shooting. (*Id.* at I-32.) The Appellate Court noted that "the fact that defendant did not fire the fatal shot is of no consequence. His act set in motion the chain of events that resulted in [Veronica Vardiman's] death and he is responsible."[5] (Ex. A to State Ct. Record at 19.)

---

[5]    Latimore raises a similar argument to challenge the sufficiency of the evidence for his aggravated battery with a firearm conviction. (Habeas Pet. at 13.) That conviction arises out of the gunshot wound suffered by Ivory Battles. Latimore again argues that the bullet which

8

Petitioner cites *Fagan v. Washington*, 942 F.2d 1155 (7th Cir. 1991)[6], a habeas case, to support his argument that he cannot be held accountable for the actions of his opponent in the gun battle. (Habeas Pet. at 16.) In *Fagan*, the defendant shot at a rival gang member, who returned fire. In the course of the ensuing melee, a third person, unknown and apparently unrelated to either gang, approached a victim from behind and shot him at a very close range. *Fagan*, 942 F.2d at 1156. The record contained no evidence that either the unidentified shooter or the victim were gang members, and nothing presented at trial suggested that the shooter and Fagan had any association, rivalry, or even knew each other. *Id.* at 1159. The Seventh Circuit held that Fagan could not be held accountable for the intervention of the third party under the accountability theory of murder, given that the unidentified shooter had no apparent connection to either gang. *Id.* The court did note that Fagan would have been guilty of felony murder, but "for reasons that have never been explained, he wasn't charged with felony murder." *Id.*

*Fagan* does not support Petitioner's claim. The third-party intervention in *Fagan* was unpredictable and apparently unconnected to the defendant's decision to initiate a gun fight. In Latimore's case, on the other hand, Hodo's return fire was a direct and foreseeable consequence of Latimore's decision to shoot Hodo. Moreover, the argument that Latimore is not guilty under the common design rule still does nothing to undercut his liability for first-degree felony murder arising from the aggravated discharge of a firearm or aggravate battery. Latimore's statement that punishing "those responsible for the deaths . . . that are foreseeable

---

injured Battles likely came from Eric Hodo's gun, not Latimore's. (Habeas Pet. at 13.) Although he did not raise this issue on appeal with the Illinois Appellate Court, it is resolved under the same theory of proximate cause felony murder: Latimore is accountable for the chain of events he set in motion by starting a gun battle outside of an apartment complex.

[6]     Although Illinois's murder statute, circa 1991, differed slightly in form from its current state, it was substantially similar for purposes of this case. Today, one is liable for felony murder if, in performing the acts which cause the death "he is attempted or committing a forcible felony other than second degree murder." 720 ILCS 5/9–1. In 1991, the quoted language held the perpetrator liable if, in performing acts causing death "he is attempting or committing a forcible felony other than voluntary manslaughter." Ill. Rev. Stat. ch. 38 ¶ 9-1(a) (1985).

consequences of a felon's act during the commission of a felony would be in contravention of the legislature's intent" is simply incorrect. Habeas Pet. at 21. Illinois caselaw applies a proximate-cause analysis to determine liability under a felony-murder charge. *See Illinois v. Dekens*, 182 Ill.2d 247, 695 N.E.2d 474 (Ill. 1998) (upholding a felony-murder charge where the intended victim shot defendant's criminal partner, since the killing was foreseeable). Given that Hodo's return fire was a foreseeable consequence of Latimore's actions, the evidence in his case is sufficient to support his murder conviction under the felony-murder rule.

Petitioner challenges this outcome by stating that, since the facts supporting his murder conviction under one of the murder counts charged in the alternative was insufficient, the whole conviction is infirm. (Habeas Pet. at 21.) Petitioner raises *Griffin v. United States*, 502 U.S. 46 (1991), for the proposition that if one of the possible bases of conviction for a general verdict is legally defective, the entire verdict may be overturned. (Habeas Pet. at 21.) The difficulty with Latimore's argument is that *Griffin* limited this remedy to cases where a general verdict could have rested on an unconstitutional count, not merely a count unsupported by sufficient evidence. *Griffin*, 502 U.S. at 55. The *Griffin* court explicitly noted that a general verdict is not subject to being overturned simply because the evidence did not support one of several alternative grounds for the verdict. *Id.* at 56 ("[W]e have never set aside a general verdict because one of the possible bases of conviction was . . . merely unsupported by sufficient evidence.")

The facts of *Griffin* are instructive: defendant Griffin and her co-defendants were charged with defrauding the government by conspiring to hide taxable assets from the IRS and conspiring to hide forfeitable property from the DEA. *Griffin*, 502 U.S. at 47. Evidence introduced at trial implicated Griffin in the IRS conspiracy and her co-conspirators in both schemes. But anticipated testimony linking Griffin to the DEA conspiracy did not materialize, and no evidence connected her to that scheme. Over Griffin's objection, the court instructed the jury that it could find her guilty on the charge of defrauding the government if it found that she

had participated in either the IRS or the DEA conspiracy. *Id.* The jury returned a general verdict of guilty on the charge that Griffin conspired to defraud a federal agency in violation of 18 U.S.C. § 371.[7] *Id.* at 48.

Griffin appealed, arguing that absent evidence sufficient to establish her participation in the scheme to defraud the DEA, her conviction for the joint IRS/DEA defrauding scheme should be thrown out. *Id.* The Court concluded that as long as the evidence at trial was sufficient to support her participation in one of the two conspiracies, her conviction could stand. *Id.* at 55. The Court distinguished this ruling from a related line of cases, which permits a conviction to be thrown out if one of several possible grounds for a verdict is unconstitutional. *Id.* at 53 ("where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.") Petitioner Latimore contends that *Griffin* establishes that if one of the first-degree murder counts charged in the alternative in his case was constitutionally defective, his conviction must be overturned. (Habeas Pet. at 21.) He has not identified any constitutional defects in this case, however, other than to allege generally that the Illinois Appellate Court's unreasonable application of Illinois Supreme Court law violated his due process rights. (*See Id.* at 18.) *Griffin* does not support habeas relief in this case.

### B.    Latimore's Self-Defense Claim

Petitioner also contends that the evidence presented at trial supported a claim of self-defense. (Petitioner's Reply [38] at 2.) Latimore did present a self-defense theory at trial, including testimony about the altercation between Latimore and Hodo prior to the shooting, Hodo's history of violence, and Latimore's testimony that he feared for his life before he fired the first shot. The trial court's decision to discredit Latimore's testimony offered in support of his

---

[7]        That statute reads, in relevant part, as follows: "If two or more persons conspire . . . to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 371.

self-defense claim falls within that court's discretion. At this stage of the proceeding, this court presumes that the finder of fact resolved inferences about the credibility of Latimore's self-defense claim in favor of the prosecution. *See Jackson v. Virginia*, 443 U.S. 307, 326 (1979). That Latimore pursued Hodo from the apartment building to the street bolsters the trial court's determination on this issue.

The cases that Petitioner presents to support his argument that the state court applied *Jackson v. Virginia* improperly do not undermine his conviction. In both *Vivar v. Senkowski*, 335 F.Supp.2d 334 (E.D.N.Y. 2004), and *Torres v. Lytle*, 90 F. App'x 288, 290-92 (10th Cir. 2004), the court granted relief under § 2254 on the basis of insufficient evidence because the prosecution failed to present *any* evidence on a key element of the offense. In *Vivar*, a defendant filed a habeas petition challenging his conviction for criminal possession of a short-barreled rifle. *Vivar*, 335 F.Supp.2d at 348. The relevant penal code prohibited possession of a firearm that was either a shotgun with a barrel under eighteen inches or a rifle with an overall length under twenty-six inches. *Id.* at 348–49. At trial in that case, the prosecution presented no evidence that could have established the length of the firearm. *Id.* On habeas review, a district judge concluded that the prosecution had not met its burden of proof on the length of the firearm and granted the Vivar's petition on that claim. *Id.* at 351. Similarly, in *Torres*, the petitioner challenged his conviction for witness retaliation arising out of a threatening letter that he sent to a neighbor shortly after the neighbor testified against him in court. *Torres*, 90 F. App'x at 289. The witness-retaliation statute required proof that the defendant retaliated against a person who had provided information to the police relating to a *felony offense*. *Id.* at 290. The neighbor at issue had both filed a felony arson report against Torres (which did not result in charges) and, two years later, testified against Torres in a misdemeanor trial. *Id.* Torres was apparently unaware that his neighbor had ever filed a complaint about felony arson, and only had knowledge of his neighbor's involvement in his misdemeanor prosecution. The court

concluded that the evidence did not establish that Torres sent his threatening letter in retaliation for the neighbor's felony arson report. *Id.*

Latimore's case is distinguishable from *Vivar* and *Torres* because the prosecution presented evidence sufficient to support every element of a murder conviction. In Illinois, an individual can be convicted of first-degree murder if he knowingly or intentionally kills or inflicts great bodily harm, or if he causes a death in the course of committing a forcible felony. *Illinois v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 731, 936 N.E.2d 588, 599 (Ill. App. Ct. 1st Dist. 2009). This includes liability for a death that is the foreseeable and proximate cause of a felony, even if the shot was fired by a victim resisting the crime. *Lowery*, 178 Ill. 2d. at 464, 687 N.E.2d at 975-76.

The evidence presented at trial was sufficient to support a finding that Latimore initiated a gun battle with an armed man outside of an apartment complex in the middle of the afternoon. He saw innocent bystanders in his vicinity before shooting. The injury and death of two bystanders was a direct and foreseeable result of the events Latimore set in motion. After reviewing the evidence in the record, this court finds that a rational trier of fact of fact could have found Petitioner guilty of first-degree murder beyond a reasonable doubt. The Appellate Court's decision to affirm Petitioner's conviction was objectively reasonable.

## II.  Claim Two: Unreasonable Application of State Law and Determination of Facts

Petitioner next argues that the Illinois Appellate Court erred by (1) improperly interpreting Illinois state law by conflating theories of felony murder and transferred intent and (2) making an unreasonable determination of facts. Neither of these claims has merit.

### A.  Unreasonable Application of Illinois Law

In a habeas proceeding, a federal court may grant relief only if the state court's ruling was contrary to federal law or applied federal law in an unreasonable manner. 28 U.S.C. § 2254(d)(1); *Colloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008). Federal courts may not use habeas review to second-guess state-court decisions about state law. *Lechner v.*

*Frank*, 341 F.3d 635, 642 (7th Cir. 2003). Accordingly, habeas petitioners are not entitled to habeas relief for errors of state law. *Id.* To the extent that Latimore's claims challenge the Illinois Appellate Court's interpretation of Illinois Supreme Court precedent, they are not cognizable in this proceeding.[8]

## B. Unreasonable Determination of Facts

Petitioner also claims that the trial court's factual findings were unreasonable. He faces a high bar to succeed on this claim: federal courts may not use habeas review to supplant a state trial court's findings of fact unless the petitioner rebuts the state court's findings with "clear and convincing evidence." *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). AEDPA requires this court to give deference to the Illinois trial court's factual determinations, including its decisions about the credibility of witnesses. *See Woolley v. Rednour*, 702 F.3d 411, 427 (7th Cir. 2012); 28 U.S.C. § 2254(e)(1). Accordingly, a trial court's decision to credit testimony supporting one version of events instead of an alternative explanation presented at trial does not qualify as unreasonable unless that decision "falls well outside the boundaries of permissible differences of opinion." *Morgan*, 662 F.3d 799-800.

In this case, Latimore has not presented clear and convincing evidence to rebut the trial court's factual findings. He points to evidence that Hodo's bullets may have killed Veronica Vardiman and injured Ivory Battles. (Habeas Pet. at 14.) As already discussed, however, both the trial court and the Illinois Appellate Court reached their conclusions about Latimore's guilt by accepting the theory that Latimore may not have fired the fatal shot. Virtually all of the evidence

---

[8]     Petitioner presents numerous arguments about the erroneous application of Illinois precedent and law to his case in his pro se petition. He argues that the Illinois Appellate Court improperly expanded the accountability theory for murder beyond the boundaries established by the Illinois Supreme Court in *Illinois v. Cooper*, 194 Ill. 2d 419, 743 N.E.2d 32 (Ill. 2000). (Habeas Pet. at 19.) He argues that his murder conviction under an accountability theory must be overturned, because Eric Hodo was acquitted at his own trial on the ground of self-defense. (Habeas Pet. at 19, citing *Illinois v. Brown*, 267 Ill. App. 3d 482, 641 N.E.2d 948 (1st Dist. 1994).) Finally, he argues that his felony murder conviction is invalid because the prosecution only proved his intent to kill Eric Hodo, not his separate intent to commit the underlying felony of aggravated discharge of a firearm. (Habeas Pet. at 21, citing, *e.g.*, *Illinois v. Davis*, 213 Ill. 2d 459, 821 N.E.2d 1154 (Ill. 2004).)

14

presented at trial, including Latimore's own testimony, supported the court's conclusion that Latimore pursued an armed man outside and fired a gun at him. (*See* Trial Transcript, Ex. F(2) at J6–J7.) That evidence was sufficient to sustain a murder conviction, regardless of whether Latimore or Hodo fired the fatal shot.

Latimore also highlights his own testimony at trial that he was in fear for his life when he initiated a confrontation with an armed neighbor. He argues that the evidence in the case supported his claim of self-defense, but fails to allege how or why the trial court's findings were clearly erroneous. (Habeas Pet. at 2–3.) The trial court did acknowledge the evidence Latimore presented to support his claim of self-defense before announcing its verdict, including his history of confrontations with Hodo (*See* Trial Transcript, Ex. F(2) J4–J5), Latimore's testimony that he was in fear for his life when he shot Hodo (*Id.* at J6), and Latimore's testimony that he had witnessed Hodo shoot two other people (*Id.* at J6). But the court largely discredited this testimony, noting that Latimore's testimony at trial that he was afraid of Hodo directly contradicted a statement he had made before trial that he was *not* afraid of Hodo. (*Id.* at J5.) The court went on to state its reasons for rejecting Latimore's self-defense claim before announcing its verdict:

> The Defendant testified at trial that he feared [Hodo] because he observed him shoot two of his friends on prior occasions. This testimony was absolutely and totally incredible. This Court cannot believe that, if he was so afraid, he pursued an armed man down a ramp. . . . This Court had the opportunity to observe the Defendant's testimony, his demeanor while testifying, and, again, that testimony was incredible. The evidence clearly establishes that Antonio Latimore was the aggressor[.]

(*See* Trial Transcript, Ex. F(2) at J6–J7.) This court will not second-guess the trial court's factual findings. Habeas relief is not intended to give petitioners an opportunity to relitigate a case, but to "guard against extreme malfunctions in the state criminal justice systems." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015). This court defers to the trial court's judgments about witness credibility because the trial court had access to more information by virtue of observing the demeanor and tone of the witnesses. *See Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th

Cir. 2012). The evidence Petitioner has presented to support his claim of an unreasonable finding of fact falls short of the "clear and convincing evidence" standard. Accordingly, Petitioner's claim is denied.

### III.    Ineffective Counsel (Claim Three)

#### A.    Procedural Default

Petitioner's final claim alleges the ineffective assistance of both his trial and appellate counsel. (Habeas Pet. at 1.) Respondent argues that this claim is procedurally defaulted, since Petitioner did not present this argument to either the Illinois Appellate Court or the Illinois Supreme Court. (Answer to Petition for Writ of Habeas Corpus at 10.) The procedural default doctrine precludes federal courts from reviewing the merits of a habeas claim that has not already been presented at each level of a state's appellate review process. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). This rule, established in Section 2254(c) of AEDPA, recognizes that state courts should have an opportunity to remedy any constitutional violations before facing the prospect of having a state conviction overturned by a federal district court. *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1043 (7th Cir. 2003). This rule of comity is meant to reduce friction between state and federal courts. *Id.*

Latimore's *pro se* reply to Respondent's answer is dedicated exclusively to this issue. (Pro Se Reply at 1–2.) The thrust of his argument is that he did, in fact, present his arguments of ineffective assistance of counsel to both the Illinois Appellate Court and the Illinois Supreme Court in supplemental *pro se* briefs, but those briefs were rejected by both courts. (*Id.*) Petitioner has enclosed letters from both of these courts denying his petitions on the grounds that he was already represented by counsel. (*Id.* at 3–4.) Accordingly, Petitioner argues that his claim of ineffective assistance of counsel has not been procedurally defaulted and should be considered by this court. (*Id.* at 1.)

In making this claim, Petitioner cites *Kizer v. Uchtman*, 165 F. App'x 465, 467 (7th Cir. 2006) (unpublished). In *Kizer*, a prisoner filed several supplemental *pro se* petitions alongside

his court-appointed counsel's petitions in state court, raising distinct issues that his attorney did not address. *Id.* at 466. The state courts rejected Kizer's *pro se* petitions each time on the grounds that the petitioner did not have a right to hybrid representation, and never considered the merits of his claims. *Id.* When Kizer attempted to raise those same issues in his post-conviction petition, the district court dismissed them as procedurally defaulted. *Id.* at 466-67. In an unpublished opinion, the Seventh Circuit reasoned that, because the petitioner had presented the relevant facts and controlling law in each of his briefs to the state courts, he had given the state a fair opportunity to consider his constitutional claims. *Id.* Accordingly, the Court of Appeals reversed the district court's finding of procedural default and remanded the case to be considered on the merits. *Id.* at 469.

Although this unpublished opinion is not binding on this court, this court has been willing to review habeas petitions in the past that, like *Kizer*, presented state courts with a fair opportunity to address alleged constitutional deficiencies in a case. *See U.S. ex rel. Smith v. Pfister*, No. 09 C 01346, 2013 WL 1568063, at *8 (N.D. Ill. Apr. 11, 2013). Discretionary review of fully developed claims presented and rejected at each level of the state appeals process does not offend the notion of federal-state comity that the procedural default rule is meant to uphold.[9]

This court will accept as true Petitioner's statement (Pro Se Reply at 1–2) that he presented his ineffective assistance of counsel claims to the Illinois Appellate and Supreme Court as they are described in part three of his original habeas petition. (*See* Habeas Pet. at 23–30.) The record confirms that he presented claims of ineffective counsel to the Circuit Court of Illinois more than once. (Ex. F at U1–U11.) This court, in its discretion, proceeds to review

---

[9] Petitioner does raise one novel claim in his habeas petition that was not raised in his *pro se* filings the in Illinois appeals process. Petitioner claims that Ivory Battles' gunshot wound was insufficiently serious—"only a nick or . . . graze by a bullet"—which in turn makes his sentence for aggravated battery with a firearm unconstitutional. (Habeas Pet. at 13 ¶ 4.) This claim was not raised in the state appeals process and is procedurally defaulted. In any case, the fact that the resulting injury is not serious would not defeat a claim of aggravated battery with a firearm.

Petitioner's ineffective assistance of counsel claims presented in his habeas petition on the merits. (*See* Habeas Pet. 23-30.)

## B.    Ineffective Assistance of Counsel

Petitioner's claims of ineffective trial and appellate counsel stem from the same purported errors: trial counsel's failure to (1) object to the sufficiency of the evidence and (2) present the possibility of a felony murder conviction to the court in lieu of intentional murder.  In turn, Petitioner argues that appellate counsel was ineffective for failing to raise ineffectiveness of trial counsel on appeal.  To succeed on his claim of ineffective assistance, Petitioner must show both that his attorney's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result.  *Pidgeon v. Smith*, 785 F.3d 1165, 1172 (7th Cir. 2015) (citing *Strickland v. Washington*, 466 U.S. 688 at 687–88 (1984)).  As explained below, the record does not support Petitioner's claims of ineffective assistance at any stage of the state proceeding.

### 1.    Failure to Object to the Sufficiency of the Evidence

Petitioner argues that the evidence presented at his trial was insufficient to support his conviction for first-degree murder because (1) he lacked the intent to kill the eventual victim, Veronica Vardiman; and (2) the evidence at trial did not establish that his bullet (as opposed to Hodo's) caused the fatal injury.  (Habeas Pet. at 30 ¶ 27.)  He claims that "the evidence at trial, at most, supported a finding that Petitioner was guilty of felony murder, not intentional murder." (*Id.*)  Petitioner faults trial counsel for failing to object to the sufficiency of the evidence both at trial and after his conviction.  (*Id.* at 23 ¶ 4.)

This claim must fail for two reasons.  For one thing, it is flatly contradicted by the record, which shows that trial counsel did object to the sufficiency of the evidence on multiple occasions.[10]  But even if no such objections had been raised, Latimore would not have suffered

---

[10]    At the conclusion of the state's case-in-chief, defense counsel moved for a directed finding, stating that the intentional murder charge could not stand because "there has

any prejudice as a result. As detailed above, Latimore's sufficiency of the evidence claim has no merit: his guilt did not depend on whether he intended to kill Vardiman or whether it was his bullet that killed her. Had defense counsel prevailed on the motion Latimore now desires, he could still have been found guilty on a felony murder theory. And, regardless of whether he was convicted on that basis or under a theory of intentional murder, a first-degree murder conviction would result. 720 ILCS 5/9–1; *see also Illinois v. Smith*, 233 Ill. 2d. 1, 16, 906 N.E.2d 529, 537-38 (Ill. 2009) (stating that felony murder and intentional murder are "merely different ways to commit the same crime") (citations and internal quotations omitted).

### 2. Failure to Present Felony-Murder Theory

Petitioner presents his second claim as follows:

> [T]here was a reasonable probability that the result of Petitioner's trial could have been different had his trial attorney presented the possibility of a conviction for felony murder to the trial court, which would have sufficed to reduce the degree of the offense from first degree intentional murder to felony murder, which may have mitigated the punishment.

(Habeas Pet. 28 ¶ 21.) As already noted, Petitioner was charged with first-degree murder under four alternative theories: intentional murder, knowing murder, and felony murder stemming from either the aggravated discharge of a firearm or aggravated battery. A conviction on any of the four would result in a conviction for first-degree murder. 720 ILCS 5/9–1.

This court cannot fault trial counsel for failing to press a theory of felony murder in lieu of intentional murder. In fact, defendant faced charges under *both* felony murder and intentional murder. Under Illinois law, a conviction on either charge would still result in a first-degree murder conviction. *Smith*, 233 Ill. 2d. at 16, 906 N.E.2d at 537-38. Trial counsel had no duty to

---

been no showing whatsoever that the bullet that killed Miss Vardiman and injured Mr. Battles was actually fired from Antonio Latimore's gun." (Trial Transcript, Ex. F(2) at I-7.) The judge denied counsel's motion for a directed finding. (*Id.* at I-10.) Counsel reiterated these arguments in her closing remarks. (*Id.* at I-48–I-51.) After the conviction, defense counsel again moved for a new trial, arguing that additional witnesses were available who could support Latimore's self-defense claim. (Trial Transcript, Ex. F(2) at J9–J10.) The court convened an evidentiary hearing, and after presenting the additional testimony, counsel moved for a new trial a second time, again arguing the insufficiency of the evidence. (*Id.* at L14–L17.) The court denied her motion for a new trial.

highlight the likelihood that her client committed first-degree felony murder to undercut the government's case for first-degree intentional murder. A conviction on either count would have produced the same result.

### 3. Ineffective Appellate Counsel

Finally, Petitioner claims that counsel on direct appeal erred by failing to raise the sufficiency of the evidence. This claim, too, is factually inaccurate. On direct appeal, defense counsel renewed the arguments about the insufficiency of the evidence to convict Latimore of murder and aggravated battery, given that the state failed to prove either direct guilt or guilt by accountability. (Ex. A at 16–17.) The court found these arguments unconvincing and affirmed Petitioner's sentence. (*Id.* at 20.) Given that this court has already determined that trial counsel's representation was not constitutionally ineffective, this court also finds that appellate counsel did not err by failing to raise trial counsel's ineffectiveness. Petitioner's claim of ineffective assistance of counsel on direct appeal fails, as well.

## IV. Certificate of Appealability

The court also declines to issue a certificate of appealability. Such a certificate may issue only if the prisoner has at least one substantial constitutional question for appeal. 28 U.S.C. § 2253(c)(2); *see United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (detailing requirements for the granting of a certificate of appealability). To the extent this court has denied relief on procedural grounds, Petitioner would be required to show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court concludes that its rulings on procedural default are not ones that reasonable jurists would find debatable. The case otherwise presents only state-law claims or meritless arguments. Petitioner has failed to demonstrate the denial of a constitutional right.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas corpus petition is denied and this court declines to issue a certificate of appealability.

ENTER:

Date:  February 1, 2015

_____
REBECCA R. PALLMEYER
United States District Court